Santos Góñez, in representation of her minor daughter Esther Góñez, Plaintiff and Appellee, v. Armando Palmieri, et al., Defendants and Appellants.

No. 6840. Argued November 15, 1935.—Decided July 24, 1936.

*Leopoldo Tormes García* for appellants. *Cayetano Coll Cuchí, Cayetano Coll Cuchí, Jr.* and *Luciano Colón* for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

A suit was brought in the District Court of Ponce and it was entitled "Santos Góñez, in representation of her minor daughter, Esther Góñez" and these words also appeared in the body of the complaint. The action was one for filiation and the defendants demurred on the ground that Santos Góñez had no cause of action. The demurrer was overruled. The case went to trial and judgment was rendered in favor of the plaintiff.

The first error assigned is upon the action of the court in overruling the demurrer. The argument is that Santos Góñez had no cause of action and that the suit should have been brought in the name of the daughter. However, as the suit was brought by Santos Góñez in representation of her daughter and this appears clearly in the complaint, we have no hesitation in holding that the real party in interest was Esther Góñez and that the mother only appeared to represent her. Section 153 of the Civil Code (1930 Ed.), and see the title to the case of *Colón* v. *Heirs of Tristani,* 44 P.R.R. 163; see also *Abarca Sanfeliz* v. *Bank of Nova Scotia,* 46 P.R.R. 898 and 914, wherein the writer dissented.

At the trial Santos Góñez took the stand to tell of her relations with Alfredo Palmieri, putative father of Esther Góñez. Based on Section 3 of the Act of March 10, 1904 (Laws, p. 130), the defendants objected to her testimony. The particular section on which defendants relied reads as follows:

"In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such,

neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this Section shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

The District Court of Ponce overruled the objection on the ground that Santos Góñez was not the real party in interest and therefore was not subject to the prohibition of the act. This was the ground of the second assignment of error. We think it is sufficiently plain that Santos Góñez was not the real party in interest. This Court has already sustained the admissibility of testimony under these circumstances. *Colón* v. *Heirs of Tristani*, 45 P.R.R. 163.

The appellee also argues that the relation or transaction to which the act refers would not be applicable to the part of a mother in a suit for filiation. The writer is inclined to think the Section so broad that Santos Góñez might be prohibited from testifying if she were trying to establish a status for herself. The majority of the Court, however, in the Tristani case, *supra*, suggested the contrary.

The third error assigned is that the court should not have found that Santos Góñez and Alfredo Palmieri lived in a state of concubinage for several years and especially at the time of the conception of the child. From the evidence in this case the court had a right to believe, almost without question, that Alfredo Palmieri and Santos Góñez had carnal relations with each other between the years 1917 and 1921, if not a little before. The plaintiff introduced evidence tending to show that they first had such a relation in the Ward of Juan González near Adjuntas; that in the year 1918 Alfredo Palmieri was appointed administrator of the Central Pellejas and took Santos Góñez there with him, put up a house for her and that they there conducted a marital life.

The defendants introduced fairly strong evidence tending to show that during her residence at the Central, Santos Gó-

ñez was employed as a servant. She denied this and said that she was disposed to wait on anybody as suggested by counsel any married woman might do at times. The court had a right to believe, and probably did believe, that a state of concubinage arose between Alfredo Palmieri and Santos Góñez while they were living at the Central. However, while the complaint was a little ambiguous in this respect, it was very clear from the evidence that Esther Góñez, the child of Santos was neither conceived nor born at the Central.

Sometime in the year 1919, Alfredo Palmieri returned to the ward of Juan González near Adjuntas. There, the evidence tends to show, he set up a house for Santos Góñez wherein she lived with her sister and her brother-in-law. It is with respect to their living in Juan González that the principal conflict in the testimony arises. Santos Góñez says, or admits, that Alfredo Palmieri lived, in part at least, with his brothers some two kilometers away in Adjuntas, but she makes the statement that he visited her every night. Her brother-in-law took the stand and said that Alfredo Palmieri slept at the house occasionally every week. He did provide for her and visited her frequently, so the testimony runs. Santos also testified that Esther Góñez was the child of herself and Palmieri and that she had never had carnal relations with any other man. During the interval between the years 1919 and 1921, Palmieri went to the United States and returned to Adjuntas or was living there in the year 1921. He died in December of that same year and Esther Góñez was born in January, 1922.

Santos Góñez on the witness stand was very unsatisfactory with respect to dates. She repeatedly spoke of the years "1928" and "1929" when she necessarily must have meant 1918 and 1919 respectively. The judge himself questioned her and to some extent cleared up the matter, although he was unable to make her identify years with precision.

There was also some evidence tending to show that one or other of the brothers of Alfredo Palmieri had contributed to the support of the child for some time after her birth, although this was denied.

Outside of the general conflict in the evidence, one of the principal grounds for the attack on the findings of the court below is that it was not clearly shown that Alfredo Palmieri and Santos Góñez were living together in a state of concubinage at the time of the conception of Esther Góñez or nine months before her birth. The court so found and we do not consider ourselves in a position to reverse the finding.

What we do find or hold, as the case may be, is that a state of concubinage could have been deduced from the testimony, while the couple were living at the Central, in other words, that a state of concubinage existed before the couple returned to Adjuntas. We hold, therefore, that, given the antecedents, when Palmieri set up a house for Santos Góñez near Adjuntas, he was continuing the relation of concubinage already established.

Hence, we need not discuss the contention of appellants that the court had no right to rely on the case of Tristani, 44 P.R.R. 163. Our decision does not depend on that case; nor did the reasoning of the court below.

The majority of the court finds no abuse of discretion in the award of costs, but the writer thinks costs should not be imposed for the following reasons:

The defendants seemingly composed a succession that felt, as is likely, bound to defend against the acquisition of a status. They were not, it seems to the writer, necessarily obliged to investigate the truth of the claim. It is not a case, as ordinarily happens, where the defendant against whom an obligation is alleged, is or could readily be placed in possession of the facts. In point of fact the suit would have to be filed whether or not the defendants opposed the claim. The status could not be settled out of court. Naturally, if the

defendants are apprized of the facts the situation varies. It seems to the writer that in a case of this kind the temerity should appear more clearly.

Also, the question of the continuance of the state of concubinage once entered into was a consideration not before established by the jurisprudence of this court.

The judgment will be affirmed.

Mr. Justice Córdova Dávila and Mr. Justice Travieso took no part in the decision of this case.